IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT COLELLI, | ) | Civil Action No. 2:25-cv-1930 |
| LISA COLELLI, and | ) | |
| TOTORO'S LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ARNOLD, | ) | |
| SHANNON SANTUCCI, | ) | |
| ANDRÉA MCCORD, | ) | |
| BUILDING INSPECTION | ) | |
| UNDERWRITERS OF PA, INC., | ) | |
| JASON KRAINBUCHER, | ) | |
| MARK STANTON, | ) | |
| ROB HAUS, | ) | JURY TRIAL DEMANDED |
| DAVID L. CLOUSE, and | ) | |
| MICHAEL A. KRAHE, | ) | |
| | ) | |
| Defendants. | ) | Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COME NOW, the Plaintiffs, ALBERT COLELLI, LISA COLELLI, and TOTORO'S

LLC, by and through their attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S.

SANSONE, ESQUIRE, ELIZABETH A. TUTTLE, ESQUIRE, AMANDA N. SHIELDS,

ESQUIRE, and MASSIMO A. TERZIGNI, ESQUIRE, and hereby files their Complaint in a

Civil Action as follows:

JURISDICTION AND VENUE

1.      This is an action for the redress of grievances and in vindication of civil rights guaranteed

to the Plaintiffs under the Constitution of the United States and the laws enacted in furtherance

thereof, including 42 U.S.C. § 1983.

2.      This action is brought against the Defendants for violating Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

3.      Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction over Plaintiffs' state law claim is also proper pursuant to 28 U.S.C.A § 1367.

4.      Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

<u>PARTIES</u>

5.      Plaintiff, Albert Colelli, is an adult individual who resides in Westmoreland County, Pennsylvania.  Plaintiff Albert Colelli is the husband of Plaintiff Lisa Colelli.

6.      Plaintiff, Lisa Colelli, is an adult individual who resides in Westmoreland County, Pennsylvania.  Plaintiff Lisa Colelli is the wife of Plaintiff Albert Colelli.

7.      Plaintiff, Totaro's LLC ("Totaro's"), is a restaurant and Pennsylvania limited liability company, located in the City of Arnold, Pennsylvania.  Plaintiff Totaro's is owned and operated by Plaintiff Albert Colelli.

8.      Defendant, City of Arnold ("Arnold"), is a Pennsylvania municipal corporation with offices located at 1829 Fifth Avenue, Arnold, Pennsylvania 15068.  At all times relevant hereto, Defendant Arnold acted by and through its officials, including, but not limited to, Defendants Shannon Santucci and Andréa McCord.

9.      Defendant, Shannon Santucci ("Santucci"), is a United States Citizen.  Plaintiffs believe, and therefore aver, that Defendant Santucci is a resident of Westmoreland County, Pennsylvania.  Defendant Santucci is now, and was at all times relevant to Plaintiffs' claims, the duly elected mayor of the City of Arnold, employed by the City of Arnold, and purporting to act within the

full scope of her authority and office and under color of state law, and pursuant to the statutes, ordinances, regulations and customs and usages of the City of Arnold.

10.     Defendant, Andréa McCord ("McCord"), is a United States Citizen.  Plaintiffs believe, and therefore avers, that Defendant McCord is a resident of Westmoreland County, Pennsylvania.  Defendant McCord is now, and was at all times relevant to Plaintiffs' claims, the code enforcement officer of the City of Arnold, employed by the City of Arnold, and purporting to act within the full scope of her authority and office and under color of state law, and pursuant to the statutes, ordinances, regulations and customs and usages of the City of Arnold.

11.     Defendant, Building Inspection Underwriters of PA, Inc. ("BIU"), is a Pennsylvania domestic business corporation located at 302 East Pennsylvania Boulevard, Feasterville, Pennsylvania 19053, and, at all times relevant hereto, acted by and through its officers, managers, employees, agents and assigns, acting in the full scope of their office, position, employment, agency and assignment.  At all times relevant to this matter, Defendant BIU was contracted by Defendant Arnold to perform commercial building inspections for compliance with Defendant Arnold's building codes and ordinances.

12.     Defendant, Jason Krainbucher ("Krainbucher"), is a United States Citizen.  At all times relevant to this matter, Defendant Krainbucher was an employee of Defendant BIU acting within the full scope of his employment and in accordance with Defendant BIU's contract with Defendant Arnold.

13.     Defendant, Mark Stanton ("Stanton"), is a United States Citizen.  At all times relevant to this matter, Defendant Stanton was the Pittsburgh Regional Manager for Defendant BIU acting within the full scope of his employment and in accordance with Defendant BIU's contract with Defendant Arnold.

14.     Defendant, Rob Haus ("Haus"), is a United States citizen. Plaintiff believes, and therefore avers, that Defendant Haus is a resident of Westmoreland County, Pennsylvania. Defendant Haus is now, and was at all times relevant to Plaintiffs' claims, a law enforcement officer employed by the City of Arnold Police Department with offices located at 1829 Fifth Avenue, Arnold, Pennsylvania 15068, purporting to act within the full scope of his authority and office, and under color of law and pursuant to the statutes, ordinances, regulations, and customs and usages of the City of Arnold Police Department.

15.     Defendant, David L. Clouse ("Clouse"), is a United States citizen. Plaintiff believes, and therefore avers, that Defendant Clouse is a resident of Westmoreland County, Pennsylvania. Defendant Clouse is now, and was at all times relevant to Plaintiffs' claims, a law enforcement officer employed by the City of Arnold Police Department with offices located at 1829 Fifth Avenue, Arnold, Pennsylvania 15068, purporting to act within the full scope of his authority and office, and under color of law and pursuant to the statutes, ordinances, regulations, and customs and usages of the City of Arnold Police Department.

16.     Defendant, Michael A. Krahe ("Krahe"), is a United States citizen. Plaintiff believes, and therefore avers, that Defendant Krahe is a resident of Westmoreland County, Pennsylvania. Defendant Krahe is now, and was at all times relevant to Plaintiffs' claims, a law enforcement officer employed by the City of New Kensington Police Department with offices located at 301 Eleventh Street, New Kensington, Pennsylvania 15068, purporting to act within the full scope of his authority and office, and under color of law and pursuant to the statutes, ordinances, regulations, and customs and usages of the City of New Kensington Police Department.

FACTUAL ALLEGATIONS

17.    Plaintiff Albert Colelli served as code enforcement officer for Defendant Arnold from in or about April, 2022, until his resignation in or about July, 2024.

18.    In or about September, 2023, Plaintiff Albert Colelli initiated a lawsuit against Defendant Arnold regarding his employment as code enforcement officer, which resulted in a settlement in or about July, 2024.

19.    The actions of the Defendants described herein were done at the behest, direction, and/or approval of Defendant Santucci using her authority as the mayor of Defendant Arnold.  At all times relevant to this matter, Defendant Santucci was aware of and ratified these Defendants' illegal conduct.  Plaintiffs believe, and therefore aver, that Defendant Santucci held personal animosity towards Plaintiff Albert Colelli and acted in retaliation for Plaintiff Albert Colelli's aforementioned lawsuit against Defendant Arnold.  Therefore, Plaintiffs believe that the actions herein were retaliatory for Plaintiff Albert Colelli accessing the courts, and were also meant to chill Plaintiff Albert Colelli's future speech and access to courts, in violation of his First Amendment rights.

20.    At all times relevant to this matter, Defendant BIU was contracted by Defendant Arnold to perform commercial building inspections for compliance with Defendant Arnold's building codes and ordinances.  Plaintiffs are not in possession of Defendant BIU's contract with Defendant Arnold.

21.    Defendant Krainbucher is employed by Defendant BIU and acted as Defendant Arnold's Building Code Official under Defendant BIU's contract with Defendant Arnold.  At all times relevant to this matter, Defendant Stanton, as Defendant BIU's Pittsburgh Regional Manager,

acted as Defendant Krainbucher's supervisor, as well as participated in and ratified the illegal conduct of Defendant Krainbucher described herein.

22.    At all times relevant to this matter, Defendant BIU, through its contract with Defendant Arnold, provided services that are the exclusive prerogative of Defendant Arnold; and/or Defendant BIU provides these services with the help of or in concert with state actors; and/or Defendant BIU jointly participates with Defendant Arnold in the rendering of these services. Accordingly, for the purposes of this matter, Defendant BIU, Krainbucher, and Stanton are state actors.

23.    Plaintiff Totaro's is owned by Plaintiff Albert Colelli and operated by Plaintiffs Lisa and Albert Colelli.

24.    In or about the beginning of September, 2024, Plaintiff Albert Colelli entered into an agreement to purchase a building in Defendant Arnold owned by Lighthouse Mission Ministries ("LMM") in order to open Plaintiff Totaro's.  At all times relevant to this matter, the area in which the building is located was zoned for commercial usage by Defendant Arnold.

25.    Prior to the sale of the building being finalized, but after the aforementioned agreement for sale, the current owner of the building gave permission to Plaintiff Albert Colelli to begin cleaning out the property.  At that time, Plaintiffs did not begin any construction or alterations requiring building permits pursuant to Defendant Arnold's Enforcement Code.

26.    On or about September 9, 2024, Defendant McCord, on behalf of Defendant Arnold, sent a violation notice letter addressed to LMM.  In that letter, Defendant McCord wrote that a violation of the International Property Maintenance Code was observed on September 6, 2024; that LMM must submit a building permit application for approval, pay an application fee, and

schedule an inspection within fifteen ("15") days; and that failure to comply will result in a non-traffic citation being filed with the Magistrate of the Westmoreland County District Office.

27.    Thereafter, Plaintiff Lisa Colelli responded to Defendants McCord's and Arnold's letter stating that there was no work being performed at the property requiring a permit, and that Plaintiffs would pay the application fee and schedule an inspection when the property was ready.

28.    Plaintiff Albert Colelli's purchase of LLM's property was finalized on or about September 29, 2024.

29.    On or about October 21, 2024, Defendant McCord, on behalf of Defendant Arnold, sent a violation notice letter addressed to Plaintiff Albert Colelli.  In that letter, Defendant McCord wrote that a violation of the City of Arnold Ordinance for obtaining requisite permits and certificates was observed on October 21, 2024, at Plaintiff Totaro's; that Plaintiff Albert Colelli must submit a zoning application for approval within fifteen ("15") days; and that failure to comply will result in a non-traffic citation being filed with the Magistrate of the Westmoreland County District Office.

30.    At that time, Plaintiffs had not performed any work at Plaintiff Totaro's requiring a permit; the building was not ready for being used or occupied to necessitate applying for an occupancy permit; and the building was already located in an area that was zoned for commercial usage by Defendant Arnold.

31.    On or about October 21, 2024, Plaintiff Albert Colelli was cited by Defendant McCord for a summary offense of failure to obtain an occupancy permit and an inspection of a commercial property.  The offense date listed on the citation was September 30, 2024, one (1) day after Plaintiff Albert Colelli purchased LLM's building.

32.     On or about October 22, 2024, Plaintiffs Albert Colelli and Totaro's were cited by Defendant McCord for three (3) summary offenses of failing to obtain an inspection prior to a change in occupancy, failing to submit an occupancy application and fee, and failure to obtain an inspection of a commercial property.  On each citation, Defendant McCord stated that Plaintiffs did not comply with Defendant McCord's aforementioned September 9, 2024, violation notice letter.  Defendant McCord's aforementioned September 9, 2024, violation notice letter was addressed to LLM and was sent prior to Plaintiff Albert Colelli taking ownership of the building.

33.     Other similarly situated individuals who are residents of and/or business owners in Defendant Arnold are not falsely accused of and cited for ordinance violations, as Plaintiffs were by Defendants Arnold and McCord.  There is no rational basis for this difference in treatment.

34.     On or about December 12, 2024, Defendant McCord, on behalf of Defendant Arnold, sent a violation notice letter addressed to Plaintiff Albert Colelli.  In that letter, Defendant McCord wrote that Plaintiff Albert Colelli needed to schedule a plumber's inspection, schedule a dye test, and pay the requisite fee within fifteen (15) days of the date of the letter.

35.     Defendant Arnold's ordinance regarding plumbing inspections states that property owners have up until one (1) year to submit a "Plumber's Inspection Report" from the date of issuance.  At the time that Plaintiff Albert Colelli was cited by Defendant McCord for failing to obtain a plumber's inspection, Defendant McCord had actual knowledge that Plaintiff Albert Colelli had not owned the property for one (1) year.

36.     Defendant Arnold's ordinance regarding dye tests and fees associated therewith states that the seller of a property must have a plumber or testing agency perform the dye test and complete an application form.  The seller must submit the application and pay the applicable fee at least fourteen (14) days prior to the sale of the property.  At the time that Plaintiff Albert

Colelli was cited by Defendant McCord for failing to submit the completed dye test application form and pay the associated fee, Defendant McCord had actual knowledge that Plaintiff Colelli, as the purchaser of the property, had not violated this ordinance.

37.     On or about December 16, 2024, Plaintiff Albert Colelli left a voice message at Defendant McCord's office, complaining of the aforementioned citations that he received.

38.     On or about December 20, 2024, Defendant Haus charged Plaintiff Albert Colelli with disorderly conduct, a summary offense, for his voice message to Defendant McCord.

39.     Plaintiffs believe that Defendant Haus charged him with a crime in retaliation for engaging in protected speech, in violation of Plaintiff Albert Colelli's First Amendment rights.

40.      On or about December 27, 2024, Plaintiff Albert Colelli submitted a right to know request to Defendant Arnold, requesting a copy of Defendant Arnold's zoning ordinance and commercial zoning for the area in which Plaintiff Totaro's is located.

41.     On or about December 30, 2024, Defendant Arnold responded that it needed thirty (30) extra days to respond to Plaintiff Albert Colelli's right to know request and sent Plaintiff Albert Colelli additional copies of Defendant McCord's aforementioned violation letters.

42.     To date, Plaintiff Albert Colelli has not received a response to his right to know request regarding Defendant Arnold's ordinances.

43.     On February 4, 2025, a hearing before Magistrate District Judge Frank J. Pallone, Jr. ("Pallone"), was held regarding Plaintiff Albert Colelli's October, 2024, citations from Defendant McCord, as well as his summary disorderly conduct charge filed by Defendant Haus.

44.     At that hearing, Judge Pallone dismissed all of the citations, as well as the disorderly conduct charge against Plaintiff Albert Colelli, with prejudice.  Judge Pallone found that Plaintiff Albert Colelli was not the owner of the property when Defendant McCord issued the September

9, 2024, violation letter, that Plaintiffs did not need to submit a zoning application for Plaintiff Totaro's as it was already located in an area that had been zoned for commercial usage by Defendant Arnold, and that the Plaintiffs could apply for an occupancy permit when they were ready.

45.     Defendants Krainbucher and McCord appeared at the hearing on behalf of Defendant Arnold.  After Judge Pallone rendered his decision, Defendants Krainbucher and McCord chastised Judge Pallone for his findings.

46.     On the same day as the hearing, Plaintiffs were having flooring installed in Plaintiff Totaro's, which is considered work that is exempted from requiring a permit under 34 Pa. Code § 403.42.  After the hearing, Defendants Krainbucher and McCord attempted to gain access to Plaintiff Totaro's and Defendant Krainbucher attempted to and/or did take photographs of the inside of the property.  At that time, Plaintiff Totaro's was not open to the public, and Defendants Krainbucher and McCord did not have permission or authorization to enter Plaintiff Totaro's.

47.     Thereafter, Defendant Krainbucher posted a sign on Plaintiff Totaro's door which stated, "Legal Notice Stop Work Order" and a violation of 34 Pa. Code § 403.42.

48.     When Plaintiff Lisa Colelli informed Defendant McCord that she did not have permission to enter the property and prevented her from entering the property, Defendant McCord yelled and used profane language towards Plaintiff Lisa Colelli.

49.     On or about February 5, 2025, Defendant Krainbucher, on behalf of Defendant Arnold, issued Plaintiffs a stop work order, as well as a notice of violation for failing to obtain a building permit.  However, as aforementioned, the work being performed at Plaintiff Totaro's was exempted from requiring a permit pursuant 34 Pa. Code § 403.42.

50.     On or about February 6, 2025, Defendant McCord, on behalf of Defendant Arnold, sent two (2) violation notice letters addressed to Plaintiff Albert Colelli.  In those letters, Defendant McCord wrote that violations of the City of Arnold Ordinance for obtaining requisite permits and zoning certificates were observed on February 5, 2025, at Plaintiff Totaro's; that Plaintiff Albert Colelli must submit a zoning application for approval within fifteen ("15") days; and that failure to comply will result in a non-traffic citation being filed with the Magistrate of the Westmoreland County District Office.

51.     On or about February 6, 2025, Plaintiff Albert Colelli was cited by Defendant McCord for a summary offense of failing to obtain a plumber's inspection and dye test, as well as pay a requisite fee to Defendant Arnold treasurer's office in violation of Defendant Arnold's ordinance.  On the citation, Defendant McCord stated that Plaintiffs did not comply with Defendant McCord's December 12, 2024, violation notice letter.  This citation was later withdrawn with prejudice after Plaintiffs submitted the completed plumber's inspection form, as well as the dye test and paid the requisite fee, in or about March, 2025.

52.     Plaintiffs believe that Defendants Krainbucher and McCord took the aforementioned actions against the Plaintiffs in retaliation for Plaintiffs rendering a defense to the aforementioned citations at the February 4, 2025, hearing in violation of Plaintiffs' First Amendment rights.  Plaintiffs further believe that Defendants Krainbucher's and McCord's aforementioned actions following the hearing were meant to chill Plaintiffs' access to courts in violation of Plaintiffs' First Amendment rights.

53.     Other similarly situated individuals who are residents of and/or business owners in Defendant Arnold are not falsely accused of and cited for ordinance violations, as Plaintiffs were

by Defendants Arnold, McCord, and Krainbucher.  There is no rational basis for this difference in treatment.

54.     Plaintiffs further believe that the actions of Defendants Arnold, McCord, and Krainbucher were meant to harass and intimidate Plaintiffs, as well as to intentionally interfere with Plaintiff Totaro's business operations.

55.     On or about February 9, 2025, Plaintiffs submitted an appeal letter to Defendant Arnold's Appeal Board regarding Defendant McCord's and Krainbucher's aforementioned violation notice letters.  Plaintiffs never received a response to their appeal letter.

56.     On or about February 9, 2025, Plaintiffs also submitted letters to Defendant Arnold's Council and Defendant Santucci, regarding Defendants Krainbucher's and McCord's aforementioned conduct.  In those letters, Plaintiffs complained of harassment by Defendants Krainbucher and McCord and that Defendants Krainbucher and McCord were attempting to inhibit Plaintiff Totaro's from opening.  Defendants Arnold and Santucci took no remedial action regarding Plaintiffs complaints and, instead, ratified the illegal conduct of Defendants Krainbucher and McCord.

57.      On or about February 10 and 11, 2025, Plaintiffs submitted letters to Defendant BIU's president, vice president, and regional manager, complaining of Defendant Krainbucher's conduct described herein.  Defendant BIU took no remedial action against Defendant Krainbucher and, instead, ratified his illegal conduct.

58.     On or about February 10, 2025, Plaintiffs submitted a complaint to the Pennsylvania Department of Labor's Department of Labor and Industry Uniform Commercial Code ("UCC") Inspection Division, regarding Defendants Arnold, Krainbucher, and McCord's aforementioned

conduct.  The Department of Labor responded that it was unable to investigate Plaintiffs' complaint.

59.    On or about February 20, 2025, Defendant Haus, in conspiracy with Defendants Krainbucher, Stanton, and Clouse, obtained a criminal search warrant for Plaintiff Totaro's. Plaintiff believes that, sometime before obtaining the aforementioned warrant, these Defendants met and agreed to obtain an illegal warrant in order to search Plaintiff Totaro's with actual knowledge that probable cause did not exist to obtain a warrant and execute a search of the property.

60.    In the warrant, Defendant Haus did not identify any crime that he suspected was being or had been committed but, instead, listed a violation of "Code Act 45 Section 403.42 Permits Required" with a violation date of February 4, 2025, to the present.  In the Affidavit of Probable Cause, Defendant Haus included statements from Defendant Krainbucher that he believed that Plaintiffs were performing work that required a permit, because he heard noises coming from Plaintiff Totaro's on February 4, 2025, and noticed unspecified building materials in the garbage located in the alley behind Defendant Totaro's.  Therefore, no probable cause existed to search Plaintiff Totaro's.

61.    On February 21, 2025, while Plaintiffs Albert and Lisa Colelli were at work and Plaintiff Totaro's was unoccupied, Defendant Haus, along with Defendants Krainbucher, Stanton, and Clouse, executed an illegal search of Plaintiff Totaro's.  In order to gain access to the property, Defendants Haus and Clouse directed an individual to remove the front door of the property, causing damage to the door and the door frame.  Plaintiffs were not charged with any crimes and/or citations as a result of the illegal search of Plaintiff Totaro's.

62.    Plaintiffs believe, and therefor aver, that the actions of Defendants Haus, Krainbucher, Stanton, and Clouse were meant to harass and intimidate Plaintiffs, as well as to intentionally interfere with Plaintiff Totaro's business operations.

63.    Plaintiffs further believe that Defendants Haus, Krainbucher, Stanton, and Clouse retaliated against Plaintiffs for engaging in protected speech, i.e. their aforementioned complaint letters, in violation of Plaintiffs' First Amendment rights.

64.    Other similarly situated individuals who are residents of and/or business owners in Defendant Arnold are not subjected to search warrants and/or illegal searches of their properties for suspected civil code violations, as Plaintiffs were by the aforementioned Defendants.  There is no rational basis for this difference in treatment.

65.    On March 21, 2025, Defendant Krainbucher wrote an email to Plaintiff Lisa Colelli stating that he had evidence to support his stop work order and notice of violations, because minor demolition, as well as plumbing and electrical work, was performed at Plaintiff Totaro's without required permits.  However, Defendant Krainbucher provided no evidence to support his allegations.  As aforementioned, no work had been performed at Plaintiff Totaro's that required permits.

66.    On or about March 21, 2025, Plaintiff submitted a zoning permit application and paid the applicable fee, according to Defendant Arnold's ordinances.  As aforementioned, Plaintiff Totaro's was located in an area of Defendant Arnold that had been previously zoned for commercial usage.  Therefore, according to Defendant Arnold's policy, it has twenty (20) days to issue a zoning permit.  However, Defendants Arnold failed to issue the permit within the requisite time.

67.    Plaintiffs believe that these Defendants failure to issue a zoning permit within the requisite time period was intentional, and meant to interfere with Plaintiff Totaro's business operations.

68.    Other similarly situated individuals who are residents of and/or business owners in Defendant Arnold are provided timely zoning permits after submitting their applications.  There is no rational basis for this difference in treatment.

69.    On or about April 8, 2025, Plaintiff Albert Colelli was charged by Defendant Krahe for summary harassment regarding a Facebook post by Plaintiff Albert Colelli on or about March 25, 2025.  In the Facebook post, Plaintiff Albert Colelli criticized Defendant McCord for posting a violation notice on Plaintiff Totaro's doors and windows that included Plaintiffs Albert and Lisa Colelli's home address.

70.    Plaintiff believes, and therefore avers, that Defendant Krahe and Defendant Santucci have a personal relationship, and that Defendant Krahe was directed by Defendant Santucci to charge Plaintiff Albert Colelli with the aforementioned crime.

71.    Sometime thereafter, the charge against Plaintiff Albert Colelli for summary harassment regarding a Facebook post by Plaintiff Albert Colelli on or about March 25, 2025, was withdrawn by Defendant Krahe and refiled by Defendant Clouse.  On or about September 23, 2025, Plaintiff Albert Colelli was found not guilty of the above-described summary offense.

72.    Plaintiffs believe that Defendants Krahe and Clouse, acting in conspiracy and at the behest of Defendant Santucci, charged Plaintiff Albert Colelli with a crime in retaliation for engaging in protected speech, in violation of Plaintiff Albert Colelli's First Amendment rights.

73.     On or about May 30, 2025, Defendant McCord wrote a letter to Plaintiff Albert Colelli informing him that the aforementioned zoning application was approved and that he needs to schedule a commercial inspection with Defendant Krainbucher.

74.     On or about June 5, 2025, Defendant Stanton wrote a letter to Plaintiff Albert Colelli stating that he would not lift the stop work order issued by Defendant Krainbucher until perceived structural repairs to roof joints and floor framing members were evaluated and documented by a design professional, and that Plaintiffs must list any cooking appliances intended for use so that an evaluation can be made regarding the possible need for an extinguishing system.  The reasons provided by Defendant Stanton for issuing and maintaining the stop work order were different than what had been previously stated by Defendant Krainbucher.

75.     On or about June 6, 2025, Plaintiff Albert Colelli responded to Defendant BIU's letter stating that all work conducted at Plaintiff Totaro's is within the exemptions provided under 34 Pa. Code § 403.42 and that no permits were required, that no construction or code violations exist, and that all health and zoning procedures have been properly followed.

76.     On or about June 16, 2025, Defendants Krainbucher and Stanton performed a commercial inspection of Plaintiff Totaro's in order to issue an occupancy permit.  Defendant Krainbucher informed Plaintiffs that they had not passed the inspection and that minor repairs and additions needed to be made in order for the property to pass inspection.

77.     After Plaintiffs provided evidence of making the corrections identified in the inspection, on or about July 31, 2025, Defendants Krainbucher and Sutton performed another inspection of Plaintiff Totaro's.  Defendant Krainbucher claimed that Plaintiff Totaro's did not pass the inspection due to completely different violations that were not identified in the previous

inspection.  Moreover, Defendant Krainbucher claimed that Plaintiff Totaro's did not pass the inspection due to code violations that were inapplicable to Plaintiff Totaro's.

78.     After Plaintiffs responded to the findings of the aforementioned inspection, Defendant Krainbucher issued Plaintiffs an occupancy permit on or about August 8, 2025.

79.     On or about August 30, 2025, Plaintiff Totaro's was issued a health inspection license.

80.     On or about September 2, 2025, Plaintiff Totaro's opened for business.

81.     Despite the foregoing, to date, Plaintiffs have not received notice that the stop work order issued by Defendant Krainbucher has been lifted.

82.     The actions of the Defendants, described herein, were intentional and done with reckless disregard for Plaintiffs' rights.

## COUNT I:

## PLAINTIFFS v. DEFENDANTS

## VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS, SPECIFICALLY, §1983 AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

## RETALIATION

83.     Plaintiffs incorporate by reference Paragraphs 1 through 82 as though fully set forth at length herein.

84.     Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendants for violations of Plaintiffs' constitutional rights under color of law.

85.     At all times relevant hereto, pursuant to the First Amendment to the United States Constitution, Plaintiffs had the right to be free from retaliation for exercising their right to freedom of speech and access to courts.

86.    The Defendants unlawfully retaliated against Plaintiffs for exercising their right to freedom of speech and access to courts.

87.    Plaintiffs' right to be free from retaliation for exercising their right to freedom of speech was violated by Defendants when they engaged in the conduct described herein, including unlawfully subjecting Plaintiffs to ordinance violations, criminal citations, an illegal search of Plaintiff Totaro's, delays in issuing a zoning permit, and a stop work order.

88.    The above-described actions of the Defendants were also meant to chill Plaintiffs' future speech and access to Courts.

89.    The actions of the Defendants, described herein, were intentional and done with reckless disregard for Plaintiffs' rights.

90.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendants, Plaintiffs suffered the following injuries and damages:

   a.    Plaintiffs' rights under 42 U.S.C. §1983 and the First Amendment to the United States Constitution to be free from retaliation were violated;

   b.    emotional trauma and suffering; and

   c.    economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendants in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFFS v. DEFENDANTS

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>EQUAL PROTECTION - CLASS OF ONE</u>

91.     Plaintiffs incorporate by reference Paragraphs 1 through 90 as though fully set forth at length herein.

92.     Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendants for violations of Plaintiffs' constitutional rights under color of law.

93.     At all times relevant hereto, pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiffs had the right to equal protection of laws.

94.     Plaintiffs' right to equal protection was violated by Defendants when they engaged in the conduct described herein, including unlawfully subjecting Plaintiffs to ordinance violations, criminal citations, an illegal search of Plaintiff Totaro's, delays in issuing a zoning permit, and a stop work order.  Other similarly situated residents and/or business owners of Defendant Arnold were not subjected to the same conduct.  There is no rational basis for this difference in treatment.

95.     The actions of the Defendants, described herein, were intentional and done with reckless disregard for Plaintiffs' rights.

96.     As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendants, Plaintiffs suffered the following injuries and damages:

     a.     Plaintiffs' rights under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution were violated;

     b.     emotional trauma and suffering; and

c.    economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendants in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFFS v. DEFENDANTS HAUS, KRAINBUCHER, STANTON, AND CLOUSE

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS,<br>SPECIFICALLY, §1983 AND THE FOURTH AMENDMENT<br>OF THE UNITED STATES CONSTITUTION

UNLAWFUL SEARCH

97.    Plaintiffs incorporate by reference Paragraphs 1 through 96 as though fully set forth at length herein.

98.    Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against the above-captioned Defendants for violations of the Plaintiffs' constitutional rights under color of law.

99.    At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiffs had the right to be free from an unlawful search by Defendants.

100.    As more fully described hereinbefore above, Defendants Haus, Krainbucher, Stanton, and Clouse, acting in conspiracy, executed an illegal search of Plaintiff Totaro's without probable cause after damaging and removing the door of the property.

101.   As more fully described hereinbefore above, these Defendants intentionally and recklessly performed an unlawful search of Plaintiff Totaro's without any consent and/or probable cause.

102.   Defendants knew, or should have known through the exercise of reasonable caution, that no reasonable basis existed for searching Plaintiffs' property without probable cause.

103.   The Defendants' actions were willful, wanton and/or done with a reckless disregard for the rights of the Plaintiff, thereby subjecting these Defendants to punitive damages.

104.   The named Defendants acted under the color of law and their actions constituted an arbitrary and unconscionable abuse of government authority.

105.   As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

    a.    Plaintiffs' rights under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution were violated;

    b.    fright, horror, and shock;

    c.    emotional trauma and suffering; and

    d.    economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendants in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFFS v. DEFENDANT ARNOLD

<u>MUNICIPAL LIABILITY</u>

106.    Plaintiffs incorporate by reference Paragraphs 1 through 105 as though fully set forth at length herein.

107.    Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. §1983 against the Defendant Arnold for violations of the Plaintiffs' constitutional rights under color of law.

108.    Defendant Santucci purported to act as a decision-maker for Defendant Arnold in her capacity as mayor of Defendant Arnold.

109.    Defendant Santucci, as the mayor and a decisionmaker with final authority, directed, was aware of, and/or acquiesced in the aforementioned illegal actions of the individual Defendants.

110.    By reason of the aforesaid conduct, the Plaintiffs' civil rights as guaranteed by 42 U.S.C. §1983 and under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States were violated by Defendant Arnold.

111.    As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Arnold, Plaintiffs suffered the following injuries and damages:

    a.    Plaintiffs' rights under 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments of the United States Constitution were violated;

    b.    fright, horror, and shock;

    c.    emotional trauma and suffering; and

    d.    economic damages related to any and all other consequential costs.

    WHEREFORE, Plaintiffs demand compensatory general damages against Defendants in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's

fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V

PLAINTIFFS v. DEFENDANTS

VIOLATION OF PLAINTIFFS' PENNSYLVANIA<br>COMMON LAW RIGHTS

INTENTIONAL INTERFERENCE WITH A<br>BUSINESS RELATIONSHIP

112.    Plaintiffs incorporate by reference Paragraphs 1 through 111 as though fully set forth at length herein.

113.    Defendants intentionally and purposefully acted to interfere with Plaintiffs ability to open and operate its business, Plaintiff Totaro's, when they engaged in the conduct described herein, including unlawfully subjecting Plaintiffs to ordinance violations, criminal citations, an illegal search of Plaintiff Totaro's, delays in issuing a zoning permit, and a stop work order.

114.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

      a.      Plaintiffs' Pennsylvania Common Law rights were violated;

      b.      irreparable damage to Plaintiffs' reputation and standing in the community; and

      c.      economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against Defendants in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages

23

against the individual Defendants; and such other relief, including injunctive and/or declaratory

relief, as this Court may deem proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
jsansone@joelsansonelaw.com
PA ID No. 41008
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
Amanda N. Shields, Esquire
PA ID No. 334025
Massimo A. Terzigni, Esquire
PA ID No. 317165
*Counsel for Plaintiffs*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: December 12, 2025